The next matter on our calendar is United States v. Oscar Boria, Jr. Thank you. May it please the Court, my name is James DeVita. I represent Oscar Boria, Jr., and I represented Mr. Boria at trial. The conspiracy conviction in this case is not supported by sufficient evidence. In the first place, this Court has decided recently, just last month, a case called United States v. Pauling, which drew a very important distinction between a permissible inference and impermissible speculation. And in this case, the conviction for conspiracy is based on impermissible speculation. And the Pauling case points out that even what can be called reasonable speculation, which the Court describes as being speculation that leads to a conclusion that is possible and plausible, but is not supported by sufficient evidence, is still speculation. Now here, the evidence did not show that Mr. Boria was any more than a customer of his co-defendant by the name of Goodman. Mr. Goodman? You concede that the record does show that your client was buying drugs in quantities that were not consistent with simple personal use. Yes, Your Honor. And when you say was buying, I concede that the evidence shows that on June 14, 2016, he bought 186 grams of cocaine. That's what the evidence shows. The other evidence about whether he was involved in a longer-term relationship with Mr. Goodman is, I would say, debatable. But even assuming that the evidence is sufficient to show that there was more than one transaction with Mr. Goodman, it doesn't show that it was more than three. And that all took place in a two-week period in the beginning of June 2016. So you don't dispute that the evidence supported the proposition that on three separate occasions, he, being the person using the 0980 telephone, met with and bought larger than individual user quantities of cocaine? That's correct, Your Honor. I don't dispute that on – well, let me parse that a little bit. Would you say, nonetheless, that that justifies treating him, charging the jury, that he could be simply a person who bought a hit for personal consumption? No, no, I didn't say that. I don't think that the law requires that it be for personal consumption. But he's buying repeatedly, three times in a two-week period, distribution-size quantities. There's no evidence of what the quantity was on any of the earlier occasions. There is none. But there is evidence of the quantity on the third occasion. There is. And as I was starting to say, Your Honor, the case law in this circuit, particularly the Brock decision that Judge Parker authored, makes it clear that the wholesale quantity in and of itself does not preclude a finding that the defendant was a simple customer. A wholesale quantity three times – a wholesale quantity on one occasion by a purchaser who purchased unknown quantities on two other occasions in a three-week period. Well, it's speculation what he bought on the other two occasions, Your Honor. That's my point. I didn't say what he bought on the other occasion, but what he bought on the one occasion. And you say that that entitles him to a charge that he could not be involved in a conspiracy for the distribution of drugs? I'm arguing that he was entitled to – that the evidence was insufficient to prove that he was more than a buyer. And that – and I think if Your Honor compares the facts – Your Honor authored the Parker decision. If you compare the facts in this case with Parker, there was a much longer relationship proven in the Parker case. There were many more transactions involved in the Parker case. And there was much more interaction and interplay with customers of the defendants in Parker than there were in this case. There was no evidence of any interaction between the defendant and the supplier relating to what his, if any, customers had. The government just stressed the fact that sometimes he got the drugs on consignment? Well, Your Honor, there is no evidence to prove that. There is one, again, speculation from the government on the basis of one text message that said, got that for you, or words to that effect. And the government argues that that is evidence that he was – what he had for Mr. Goodman was the cash for a prior purchase. But there was no evidence to support that other than the very ambiguous text message that had that language. And it relies on – the government relies on conversations having absolutely nothing to do with Mr. Boria with other purchases from Mr. Goodman that show that they were purchasing on consignment. And there was no evidence that my client did. There was evidence that Mr. Wheeler – the co-defendants, Mr. Wheeler and another defendant by the name of Beniquez bought on consignment, but no evidence that my client did. You don't dispute that Mr. Boria was a regular customer of Mr. Goodman's? I'm referring to the 206 text messages that were found on the phone? Your Honor, I don't dispute that the evidence permits the jury to find that. I do not concede that that was in fact his – those were his text messages, but the jury could have concluded from that. And I'm arguing that notwithstanding those conversations, those communications, he could still – and still was – the evidence did not show he was anything more than a buyer. But even assuming, Your Honor, if the evidence was sufficient to support any conspiracy, it didn't support the conspiracy that was charged in Count 1, which is at least at a minimum 15-member conspiracy with others known and unknown. And so that the evidence in this case showed nothing more than interaction on at most three occasions between Boria and Mr. Goodman, and that there was no connection whatsoever with any of the other members of the alleged conspiracy, other members. So therefore, there was a variance between what was in the indictment, what was charged, and what was proven at trial. And the variance resulted in prejudice to my client because it allowed the government to put in reams of evidence having nothing to do with my client, having only to do with the other alleged co-defendants. And that was – in fact, it's demonstrated by the government's own brief, where they rely on a conversation between Denise Flores and Juan Bonicas to show that my client was buying on consignment when he had nothing to do – and Denise Flores said she had nothing to do with my client. So how – that shows the prejudice. That's just an example of evidence that would never have come in if the charge were correctly made regarding the alleged conspiracy between Goodman and Mr. Boria. Your Honor, my time is coming to a close, and I would like to discuss the guidelines issue in this case because – Do you have a copy of the Parker decision that you cited with you? I do, Your Honor. Pass it. I believe I do. Do you want this citation? Well, no, I'd like a copy of it if you have a copy. A copy of it. If not, that's okay. I don't – I do have a copy of the Brock decision. That's all right.  Thank you. It's cited in my brief, Your Honor. All right. The guidelines issue here, Your Honor, I submit that there were two flaws in the district court's guidelines calculation, and one of them, the most serious one, revolves around the determination of the drug quantity. Mr. Boria was arrested with 186 grams. The district court concluded that the other two alleged occasions involved an equal amount and, therefore, sentenced him under a guideline for more than 500 grams of cocaine. If you look at, in the polling decision sites, two cases from this circuit called Shinoubi, and the first one is 998 F. 2nd 84. That's United States against Shinoubi. There, the district court – I mean, the court of appeals reversed the district court, and it was because the district judge – there, the defendant was a person who was arrested bringing heroin in from Nigeria, and I believe it was around 400 grams or so, and the district court – the evidence was that he had made six or seven – at least six or seven prior trips, and the district court used the multiplier and said, I'll multiply the quantity that he brought on this occasion with the number of times that the evidence shows he went and brought drugs and arrived at a more than – I think it was 150 grams or whatever. I forget exactly what the numbers were, but this court said that that was based on speculation because there was no evidence to support the quantity that was involved in the earlier trips. Similarly – But it sounds from your description of the fact that there's also no evidence that each trip involved an importation. Well, I think the district court said that it did, and the court of appeals – there's a difference between this case because in this case, it strongly supports the proposition that each of the meetings, each of the three meetings in the other guy's car were for a purchase of heroin. Well, the court of appeals affirmed or accepted the inference from the district judge that the earlier trips to Nigeria involved the importation of heroin. Involved, but that doesn't mean that each one of them had a – Well, the court actually went through an analysis that said that each of those trips could – reasonably was concluded that there was importation on those earlier trips. It said that the quantity was speculative. Remind me of the standard we use in reviewing the district judge's quantity determination. Well, I believe that it's – the guidelines review is – reviewed de novo, but the factual findings are – I think it's clear and convincing, or abuse of discretion. I don't recall one of those two. It's a higher standard than – I think it's clearly erroneous as the standard. I see that my time is up. Unless there are more questions?  Yes, please, Your Honor. Thank you. We'll hear from the government. Thank you. May it please the court. Allison Nichols for the government. I represented the government at trial, as I do now on appeal, and I do have, Judge, a copy of the Parker decision that I could hand up. Thank you. Could you, counsel, share with us the evidence that this defendant was involved in a conspiracy as opposed to just buying and selling drugs? Yes, Your Honor. The evidence here was a far cry from the typical buy-sell scenario involving the casual sale of small user quantities of drugs. Instead, the evidence here proved that Boria trafficked in large wholesale quantities of cocaine, which he obtained on credit from his regular supplier. How do you know it was on credit? Your Honor, there is strong evidence of sales on credit in this case. What is there besides the entirely cryptic text message? Well, Your Honor, first we would say that they were not entirely cryptic, and the jury's reasonable inference about the meaning of those . . . They were cryptic. There were . . . Is that for you? I'm sorry? Didn't you say, I got that for you? Yes, he said . . . That doesn't sound like overwhelming evidence to me. I think it's important to look at the pattern of the text message communications throughout the whole conspiracy here. So on June 6th . . . We can get to the other ones later, but what is it that this man said that you believe demonstrates his participation in a conspiracy, other than, I've got that for you? Yes, Your Honor. So that's two separate questions. The evidence of his participation in the conspiracy is given by multiple factors, sales on credit of which are only one. I'd like to address that one first, Your Honor. So the evidence of sales on credit is given by the content of those text messages. So on June 6th, you have Collier Goodman, the supplier, sending two text messages, one to Oscar Boria that says, Yo, and one to Damon Wheeler, another of his dealers, that also says, Yo. Oscar Boria responds to that text message, have that for you. And it's the government's position, as it was at trial, that that is a fair inference for the jury to draw, that have that for you refers to money that Boria owed his supplier for a previous purchase of drugs. The context here that's also important is that, in tandem, we have these conversations going between Damon Wheeler and Collier Goodman, which give further information about Goodman's intent and his relationship with those dealers. Because Damon Wheeler, unlike Oscar Boria, was not ready. And he told Collier Goodman, I took a few days off, and I don't have that for you. And then they proceed to have a very detailed conversation that's intercepted over the wiretap, in which Goodman becomes very angry. Your Honor, you may have strong evidence against Wheeler. It doesn't help me much on what you've got against this man. Absolutely, Your Honor. So I think that this Court's precedence is— Before, let me—I'm sorry for interrupting you. I'll let you finish your answer. But are we clear that it's a government's obligation to prove entrance into and participation in this conspiracy beyond a reasonable doubt? Absolutely, Your Honor. Okay. So what's— What else besides the credit, sales on credit, show that this man was part of a conspiracy? Beyond a reasonable doubt. The quantity of the drugs involved is one factor. And there is also prolonged cooperation between the parties, a level of mutual trust, and standardized dealings. And the government— Before I generalize your conclusions, point us to the evidence. The evidence of 186 grams of cocaine being recovered at the third transaction is very strong evidence that this defendant was not a mere buyer, and rather that they were—he was engaged in a conspiracy with his supplier in which both had a vested stake in the outcome. Hawkins says that in addition, in some cases, a large— How do we know that he wasn't using—he wasn't getting these drugs and reselling them to support his own habit? It goes on all the time. Supporting his—selling to support a habit would not necessarily take him out of the conspiracy. The question here is whether Boria had agreed to participate in what he knew to be a collective venture towards a common goal. What evidence do you have that he knew anybody else? He knew any of these other 18 defendants that you took down? I just want to make the point very quickly that circumstantial evidence is absolutely sufficient to make findings beyond a reasonable doubt. There are numerous cases where we've held that where you have a spoke conspiracy where a person in the center is distributing drugs for redistribution to this one, to that one, to that one, to that one. They don't need to know each other or even know of each other's existence. I'm not aware of any case that holds that they need to be selling on credit. I'm not sure I understand why in this case the person saying, I have that, couldn't equally mean and wouldn't be sufficient if it meant I have the money now if the seller is one who won't sell on credit but only wants to be paid up front. I have that. I have the money now. So let's meet and get it. I don't see why that would be in any way insufficient. Absolutely so, Your Honor. I think the case law shows that sales on credit are only one of the factors that can but do not have to show a conspiracy. Is there any evidence in the record that Mr. Boria knew any of the other people besides Mr. Goodman? No, there is no evidence of that. But that evidence is not required in order to find that he was a knowing member of the conspiracy that the government charged. Well, he had to know there was a conspiracy, right? Yes, Your Honor. And how does he know that except he knows he's buying drugs from Goodman regularly for a long time, sometimes on credit. He knows that. How does he know there's a conspiracy going on? One who deals in large quantities of narcotics can be presumed to know that he's part of a venture that extends beyond his individual participation. They all had different spots, as I read the record, where they met Mr. Goodman. So he may have never seen another person doing a deal with Goodman. That's absolutely the case, Your Honor, and the government does not argue and the case law does not say that he has to have seen Goodman doing a deal with another person. He knows that Goodman is in the business of selling drugs. He knows that his own sales further Goodman's interests, and vice versa, because they are engaged in a common venture. That's true of every single sale of narcotics. Your Honor, it's true of most wholesale quantities of sales of narcotics where there is a prolonged cooperation between... The seller is making a profit and the buyer has... a desire for the product, then you have this commercial transaction that you talked about, but I don't understand how that translates into a conspiracy. The wholesale quantities and the regular interactions between the parties here take this out of a buy-sell scenario and put it into a conspiracy. Here you have both Goodman and Boria having a vested interest in the continual resells of cocaine so that the flow of money between them can continue. It is reasonable for Boria to have known or have had reason to know that his own success depended on Goodman's success, and Goodman's success depended on Goodman having... Sharing the drugs with his friends. 200 grams of cocaine every few days is a lot to share with your friends, but in any case, there is no requirement that in order to put him in a conspiracy that he be selling the drugs as opposed to giving them away. Isn't this the general subject of the Parker decision? Yes, Your Honor, and I think the Parker decision is important for a few reasons. The Parker decision sets forth the policy ramifications of the buy-sell defense and why it would be under certain particular circumstances unjust to hold a buyer responsible for the conspiratorial intent of people with which he has not joined. The knowledge of the buyer's intent to transfer without more does not show that the transfer had a stake, but here we do have more. We have prolonged cooperation between the parties. There were at least three transactions, and the jury was entitled to correctly infer that that showed that they knew each other, that they had a level of mutual trust. What was the basis for disregarding the jury's finding that there was less than 500 grams? You mean in the district court's sentencing determination? Yes. Well, Your Honor, it's a different standard, of course. It's a preponderance standard, and it's axiomatic that a district court can take into consideration acquitted conduct and fashioning in making determinations as to the guidelines. The standard of proof is preponderance, and the court should review the district court's interpretation of the guidelines de novo, but the findings of fact for clear error. And Judge Seibel did not err in her decision here that more than 500 grams had been proven. That decision was grounded in two main points. First, that the day that Boria was caught red-handed with 200 grams of cocaine could not possibly have been the only time that he ever interacted with Goodman. Based on the evidence in the case, it was a permissible and reasonable 186? Is that what you? 186 grams, 205 with the packaging, yes, Your Honor. And second, that Boria had reason to believe that he could not have possibly been the only one involved in this conspiracy, and so as Judge Seibel reasonably found the amount of extrapolation required. What's the basis for that statement, that he could not reasonably have believed that he was the only one? What's the factual basis? The factual basis is a few things, Your Honor. The drug quantity is very important to that analysis, and then along with that is the regularity with which What does the quantity have to do with it? He could have been dealing with a man who had access to sizable quantities of drugs. Yes, Your Honor. I think that Judge Seibel's finding was that Boria could not have reasonably believed that Goodman existed in a conspiracy just to sell him with wholesale quantities of narcotics, and that Boria's ability to obtain those large wholesale quantities of cocaine from Goodman every few days depended on Goodman having a sort of life cycle of drugs and money with other individuals. Unless the Court has other questions, I would rest on it. Thank you, Counsel. Thank you, Counsel.  Thank you, Your Honor. Judge Lovano, I'd like to respond to your observation, which is correct, that it's not required that Mr. Boria know the identity of other people. However, he does have to know and understand that he's part of a larger organization and that there's a mutual dependence with those other people. There is no evidence here that Mr. Boria knew that Goodman had any other customers. No evidence whatsoever. Only speculation. It's not mere speculation. If you can call somebody on a regular basis, and we see here three times in a week, I call, I need the drugs, I've got the money, or I've got the money to pay my prior debt, whichever one it is, I don't see that it matters. This person is ready to sell you a distribution-size quantity. You know that he's in the business, and he's not likely to be in the business just to sell to you when you call up. Your Honor, the ---- This is not speculation. It is a logical inference. But it doesn't show that he had anything to do or any mutual dependence on other customers. No, no. Like saying that a whole ---- He has a dependence for his acquisitions on the person he is regularly ---- On Goodman. But it doesn't show ---- And I'm now arguing not that there was ---- I still maintain the evidence didn't show that he was more than a customer. But clearly, even if it shows that there was a conspiracy between Goodman and Boria, it doesn't show that he had any mutual dependence or even awareness that there were other customers. There's no evidence of that. It's just speculation. That he had ---- That Goodman, just because Goodman could sell him wholesale quantities doesn't mean he had actual other customers who interacted with him in the overall enterprise. There is no showing of a connection. You know, Your Honor used the analogy of a hub and spokes. There's no requirement that he have a connection with the other customers. The Supreme Court disagrees, Your Honor, because the Supreme Court says that a hub and spokes is not enough. You have to have a rim connecting the spokes. And there is no rim in this case. What case ---- I think that was Berger or Kodiakos, one of those two. Your Honor, the jury's verdict, as you pointed out, is very important in this case because the jury's verdict also shows that it rejected the government's conspiracy theory. And the government's ---- because the government's conspiracy theory included Mr. Boria in the overall organization that the government alleged. And it couldn't have come to the conclusion that he was responsible for less than 500 grams if he was part of that larger conspiracy. And the significance of that is if the jury concluded there wasn't enough evidence to put him in that conspiracy, there wasn't enough evidence to put him in that conspiracy. That's the significance of the jury's verdict on that point. The ---- Your Honor, I just want to come back to the significance of the Shinobi case because the Second Circuit reversed in a case where the analysis was almost identical to what Judge Seibel used in this case to come up with the more than 500 grams. And why it's important is if I'm right, if we're right on the quantity, the correct sentencing range for Mr. Boria is 15 to 21 months. He's already been in for 20 months as of tomorrow. So that he's already served almost the top end of that range. And I submit that if this case, if as I contend that the quantity determination was based on speculation, as the Shinobi case leads us to conclude, that he's on the verge of being beyond even the appropriate sentencing range if he's even guilty of the charge in Count 1. Thank you, Your Honor. Thank you both. Very nice argument. We'll reserve decision.